SPENCER SMITH *et al.*, RAILROAD COMMISSIONERS, Appellees, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY *et al.*, Appellants.

1. **Action:** PARTIES: REAL PARTY IN INTEREST: DEMURRER. The question whether the plaintiff in an equity cause is entitled to maintain the action as the real party in interest, is properly raised by a demurrer to the petition upon the ground that the plaintiff is not entitled to the relief demanded.

2. **Railroad Commissioners:** ACTIONS TO ENFORCE ORDERS SHOULD BE IN NAME OF STATE: AMENDMENTS. Actions instituted for the enforcement of the orders of board of railroad commissioners, under the authority of chapter 133 of Acts of the Twentieth General Assembly, or of chapter 28 of Acts of the Twenty-second General Assembly, being for the benefit of the public, should be brought in the name of the state. But where such an action has been commenced in the name of the railroad commissioners they may be permitted to amend their petition by substituting the state as plaintiff.

3. **Railroads:** INTERSECTIONS: CONNECTIONS FOR TRANSFER OF CARS: DISCRETION OF RAILROAD COMMISSIONERS: STATUTE: CONSTRUCTION. So much of section 1292 of the Code as makes it compulsory upon any railway corporation whose track crosses another line of railway of the same guage to so connect its road with the line crossed as to permit of the transfer of cars from one line to the other, is repealed by chapter 24 of Acts of the Twentieth General Assembly, which requires such connections to be made only "whenever ordered by the railroad commissioners," and which gives to the commissioners the discretion to order such connection or not, according to the necessities of the case.

*Appeal from Kossuth District Court.*—HON. GEORGE H. CARR, Judge.

SATURDAY, OCTOBER 8, 1892.

ACTION in equity to enforce an order of the board of railroad commissioners of the state of Iowa, requiring the defendants, the Chicago, Milwaukee & St. Paul Railway Compay and the Chicago & Northwestern Railway Company, to connect their tracks at Algona. A demurrer to the petition was overruled. The defendants refused to plead further, and appeal.—*Reversed.*

*John W. Cary* and *J. C. Cook,* for appellants.

*John Y. Stone,* Attorney General, for appellees.

ROBINSON, C. J.—On the application of citizens of Algona, asking that the defendants be ordered to connect their tracks at that place "with a 'Y,' or in any other way that may be deemed best for their interest and the interests of the community," the plaintiffs investigated the facts, and made a finding and order as follows: "* * * In this case the investigation made by the commissioners failed to satisfy them there was any commercial necessity for the connection. The decision of the case must rest upon the construction of the statute. This, as has been before stated, they have always regarded, and still regard, as mandatory. It is, therefore, hereby ordered that the connection be made at the earliest day practicable." The petition alleges that the defendants refuse to obey the order, and asks for a mandatory injunction restraining them from further violation, and enjoining them to obey the order. The ground of demurrer alleged is that the petition does not state facts entitling the plaintiffs to the relief demanded.

I. The appellants contend that the board of railroad commissioners has no authority to maintain an action of this kind. The appellees insist that no question as to such authority was presented in the district court, and that

1. ACTION: parties: real party in interest: demurrer.

it cannot be considered now.    Whether it is meant that
the question of authority was not presented by the
demurrer, or was not insisted on in argument in the
district court, is not shown, and we must therefore pre-
sume that all questions raised by the demurrer were
presented to and considered by the district court.  This
is not a case of defect of parties, for that occurs where
there is an omission of a party who ought to have been
joined with others as plaintiff or defendant.    *Mornan
v. Carroll*, 35 Iowa, 24;   *Turner v. First National Bank
of Keokuk*, 26 Iowa, 566.  It is not claimed that any other
party should have been joined with the board as plaintiff.
Nor is it a case of misjoinder of parties to be taken ad-
vantage of by motion.    The question presented on this
branch of the case is whether the board of railroad com-
missioners can maintain an action in equity to enforce
an order which they have made like that under consid-
eration.    The demurrer denies their right to the relief
which they demand, and necessarily questions their right
to maintain the action; for, if the petition does not show
they are entitled to maintain the action, it follows that
it does not show that they are entitled to the relief
demanded.    A petition is not sufficient if it merely
show that a right of action exists in favor of some one,
but it must also show that it exists in favor of the plain-
tiff in his own right, or in his representative capacity.
See *Hanna v. Hawes*, 45 Iowa, 442.    We therefore con-
clude that the right of the plaintiffs to maintain this
action was made an issue by the demurrer, and that it
is properly before us for adjudication.

II.    Chapter 133 of the Acts of the Twentieth
General Assembly gives to the district courts of this
state jurisdiction to enforce the rulings,
orders and regulations affecting public
rights made by the board of railroad com-
missioners.    It provides that "the pro-
ceedings therefor shall be by equitable action in the

2. RAILROAD com-
missioners:
actions to en-
force orders
should be in
name of state:
amendments.

name of the state of Iowa, and shall be instituted by
the attorney general whenever advised by the board of
railroad commissioners that any railway corporation or
person operating a line of road in this state is violating
and refusing to comply with any rule, order, or regulation
made by such board of railroad commissioners and
applicable to such railroad or person." If this statute
were the only one authorizing actions to enforce the
orders of the board, it would be clear that such action
should be brought only in the name of the state. But
section 16 of chapter 28 of the Acts of the Twenty-
Second General Assembly contains the following pro-
visions: "Sec. 16. * * * Whenever any common
carrier, as defined in and subject to the provisions of
this act, shall violate, or refuse or neglect to obey, any
lawful order or requirement of the said board of rail-
road commissioners, it shall be the duty of said com-
missioners, and lawful for any company or person
interested in such order or requirement, to apply in a
summary way, by petition to the district or superior
court, * * * alleging such violation or disobe-
dience, as the case may be; * * * and said court
shall proceed to hear and determine the matter speedily
as a court of equity, and without the formal pleadings
and proceedings applicable to ordinary suits in equity,
but in such manner as to do justice in the premises.
* * * Whenever any such petition shall be filed or pre-
sented or be prosecuted by the said commissioners, or
by their direction, it shall be the duty of the attorney
general of the state to prosecute the same. * * * "
This section also contains the following: "Saving to
the commissioners and any other party or person inter-
ested the right of appeal to the supreme court of this
state, under the same regulations now provided by law
in relation to appeals to said court as to security for
such appeal, except that in no case shall security for
such appeal be required when the same is taken by said

commissioners."

It will be noticed that, while the act of 1884 expressly provides that actions of this kind shall be brought in the name of the state, the act of 1888 does not, in terms, require them to be brought in any other. It is true that the act last named requires the commissioners to apply in a summary way by petition to the proper court for redress when any of their lawful orders or requirements are disobeyed, and that the right of appeal is saved to them. Ordinarily, it would be presumed that a person authorized to make an application or to file a petition must do so in his own name, and the right of appeal in an action can be exercised only by a party to it. But the commissioners have no personal interest in their orders and requirements, and act only by virtue of the statute in attempting to enforce them. The rights which they are required to protect by actions in equity are public, and it is proper that such actions should be brought in the name of the state. Under the act of 1884, it was the privilege of the commissioners to inform the attorney general when any rule, order or regulation made by them was being violated or disobeyed; and when the attorney general was so advised, it was his duty to institute the action necessary to compel obedience. The act of 1888 makes it the duty of the commissioners to institute such actions, and, although it is still the duty of the attorney general to prosecute them, the power to control vested in the commissioners is greater than it was under the act of 1884. The act of 1888 was designed in part to make it the duty of the commissioners to secure the enforcement of their orders and requirements, and to increase the facilities for accomplishing that object, but it contains nothing in conflict with the provisions of the act of 1884, which requires that actions brought to enforce their rulings, orders and regulations shall be in the name of the state,

That being true, we are required by well established
rules of interpretation to adopt that construction which
will give force and effect, so far as practicable, to both
statutes, and hence must hold that actions of this char-
acter are still required to be brought in the name of
the state, and that when objection is made the com-
missioners cannot maintain them in their own name.
We conclude that the demurrer should have been
sustained.

But it is the right of the parties to such actions to
have them heard and determined speedily, "without the
formal pleadings and proceedings applicable to ordi-
nary suits in equity, but in such manner as to do
justice in the premises." Under that provision, the
courts have ample power to disregard or permit the
correction of errors which do not affect the merits of
the case. In this case the commissioners stand for and
represent the state, and have only sought relief to
which they claim the state is entitled. The defend-
ants cannot have been prejudiced by the fact that the
action was instituted in the name of the commission-
ers, and justice will be done by permitting an amend-
ment which will meet the requirements of the statute,
rather than by compelling the commissioners to insti-
tute another action. Therefore the commissioners will
be permitted to substitute as plaintiff the state for
themselves, and, if such substitution is made, the case
may be further prosecuted on its merits.

III. The commissioners found, in effect, that there
was no necessity for the connection in question, but
ordered it on the theory that it was their
duty to do so, under section 1292 of the
Code, as amended by chapter 18 of the
Public Acts of the Fifteenth General
Assembly, and section 3 of chapter 77 of
the Acts of the Seventeenth General
Assembly. Section 1292 of the Code contains the fol-

3. RAILROADS: intersections: connections for transfer of cars: discretion of railroad commissioners: statute: construction.

lowing: "Any railway corporation operating a railway in this state intersecting or crossing any other line of railway of the same gauge operated by any other company shall, by means of a 'Y,' or other suitable and proper means, be made to connect with such other railway so intersected or crossed; and railway companies, where railroads shall be so connected, shall draw over their respective roads the cars of such connecting railway, and also those of any other railway or railways connected with said roads made to connect as aforesaid, and also the cars of all transportation companies or persons, at reasonable terms, and for a compensation not exceeding their ordinary rates." The provision of the act of 1878, upon which the commissioners relied, is as follows: "Sec. 3. Said commissioners shall have the general supervision of all railroads in the state operated by steam, and shall inquire into any neglect or violation of the laws of this state by any railroad corporation doing business therein.    *    *    *"

It is not denied that the roads of the defendants are of the same gauge, and that they cross each other at Algona. Under the provisions quoted, it would have been the duty of the defendants to connect their tracks at Algona, so that cars could be drawn from one road to the other at that place, and of the commissioners to inquire into any neglect of that duty; but no means were provided by which they could enforce a performance of it. That was the condition of the law when chapter 24 of the Acts of the Twentieth General Assemby took effect. Section 1 of that act prescribes the duties of railroad corporations at all points of connection, crossing, or intersection with the roads of other corporations, and closes with the following: "Such corporations, connecting or intersecting as aforesaid, shall also, whenever ordered by the railroad commissioners, so unite and connect the tracks of said several corporations as to permit the transfer from the

track of one corporation to the other of loaded or
unloaded cars, designed for transportation on both
roads." It is insisted by the appellants that this pro-
vision repeals so much of section 1292 of the Code as
makes it compulsory upon railway corporations, when
tracks intersect or cross each other, to connect them
with a "Y" or other suitable means. There is no repeal
in terms, and repeals by implication are not favored.
We must, therefore, inquire what conflict there is
between those parts of the two acts in question, and
what evidence there is, if any, of a legislative intent
that the later should repeal the earlier one.

It is evident that the provision of the act of 1884
quoted applies to railroads which are contemplated
by section 1292 of the Code, for it applies to all rail-
road corporations whose railroads cross or intersect
other roads, and to all points of connection or crossing.
It is not restricted in terms to intersections or crossings
made by roads of the same gauge, it is true, but con-
nections for the transfer of cars from one road to
another of a different gauge would be useless, and are
not within the scope of the act of 1884. Therefore, it
appears that section 1292 makes a connection compul-
sory at all points where it could be ordered by the
commissioners under the act of 1884. As an order of
the commissioners can have no greater force than an
act of the general assembly, it follows that, if section
1292, so far as it required connections at railroad inter-
sections and crossings, is in force, the provision of the
act of 1884 under consideration is wholly without effect.
It will be presumed, until the contrary appears, that
all the parts of a legislative act were intended to have
force and effect, and when, in construing two acts of
different dates, it is found that full effect cannot be
given to both, the later one must prevail, so far as they
are repugnant to, or in conflict with, each other. See
Sutherland's Statutory Construction, section 160.

When section 1292 was enacted, the system of supervising and controlling railways by means of a board of railroad commissioners had not been adopted, and the laws in regard to them were necessarily inelastic and general, in many cases operating harshly, if not unjustly. The commissioner system, as it existed when the act of the general assembly of 1884 took effect, was designed to give to the state greater facilities for dealing with the railways subject to its control, in order that the respective rights of the people and the railway corporations might be more readily ascertained and defined, and that abuses might be corrected and justice promoted. An example of what was designed to be accomplished is furnished by the facts under consideration. Section 1292 of the Code, as amended, required the construction of "Y's" or other suitable connections between the tracks of different roads of the same guage when one crossed or intersected the other, without regard to the expense of such a connection or the necessity for it. In this case the crossing is not at grade, and it is claimed by the appellants that the expense of making a suitable connection, including the procuring of a right of way, would be large, and that there is no interest of sufficient importance to require that the connection be made. The commissioners found that there was no commercial necessity for it, and we are justified by the language of their decision in concluding that in their opinion the connection should not be ordered if not required by the statute. It is not the policy of the law, however, to require the connection in question, and if we may rely upon the showing made by the record, it would be oppressive and unjust.

We think the provision of the act of 1884 which we have quoted was designed to meet such cases as this, by giving to the commissioners the power to order the connection to be made or not, as they should deem

best, in view of all the interests involved, and that it was intended to be a substitute for so much of section 1292 of the Code as made the connection compulsory.

It follows that the order of the commissioners requiring the connection to be made by the defendants was erroneous.    REVERSED.