THE GREEN BAY LUMBER COMPANY v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Carriers:** CONNECTING LINES. Plaintiff shipped lumber to Des Moines over a certain railroad. The cars were delivered to a terminal company, engaged in switching cars, and tendered to defendant company to be hauled to points on defendant's line. Defendant refused to receive the cars, but offered to take the lumber on its own cars, stating that the first carrier had forbidden it to use the cars. Plaintiff, in a talk with the original carrier's agent, after the original contract of shipment was made, obtained from him permission for the use of the first carrier's cars by defendant in the shipment of plaintiff's lumber. *Held,* that an order of court, directing the defendant to receive the cars, and the lumber loaded thereon tendered by plaintiff, and transfer it over defendant's railway to stations set forth in the application, and to receive and transport "all such other and further cars, and lumber loaded thereon, as may by loaded with lumber of plaintiff, and under its direction and control, that plaintiff may hereafter tender for shipment over defendant's line," was not justified by Code, section 1292, providing that every railroad corporation shall draw over its road the cars of connecting railways.

**Estoppel:** MANDAMUS: *Carriers.* The fact that a railway company based its refusal of a shipper's request that it receive the cars of a connecting road for transportation over its line, as required by McClain's Code, section 2039, on the ground that it did not want to do business with such company, does not prevent it from relying upon any legal excuse it had for its refusal, in a proceeding by mandamus, to compel it to receive such cars.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

WEDNESDAY, MAY 19, 1897.

THE plaintiff company purchased a quantity of lumber in Minneapolis, and shipped the same to Des Moines, Iowa, over the lines of the Chicago, Milwaukee & St. Paul Railway Company and the Des Moines, Northern & Western Railway Company. Some of the cars reached Des Moines on the fourteenth of October, 1895, and were delivered to the Des Moines Union Railway Company, a merely terminal company, engaged in switching cars to and from the different roads entering Des Moines, and by it the cars were tendered to the defendant company, by direction of the plaintiff, to be hauled by said company to points west on its line. The defendant company refused to receive the cars belonging to the other roads, but offered to take the lumber in its own cars to its destination. Under protest, the plaintiff transferred the lumber to defendant's cars, and it was carried forward. On the twenty-fifth of October, 1895, two more cars arrived, and were tendered and refused under like circumstances, and this action was commenced, asking for a mandatory injunction or order to compel the defendant company to receive the cars in question, and others that may be tendered, and haul them to their destination on its line. The district court granted the order, and the defendant company appealed.—
*Reversed.*

*Carroll Wright* for appellant.

*C. C. & C. L. Nourse* for appellee.

GRANGER, J.—Some facts particularly relied on by appellant are that the shipment from Minneapolis was not a through shipment to points west of Des Moines, but a shipment to Des Moines only, and when the lumber reached Des Moines the shipment was at an end, and the taking of the

lumber by the defendant company would be a re-ship-
ment; that the defendant company had cars of
its own, then on hand and ready for such service;
and that it had received notice from the company
owning the cars in which the lumber was (the Mil-
waukee) not to take the cars onto its (the Rock Island)
line.   In respect to this notice, it is appellee's position
that one Tittemore was the agent of the Milwaukee
Company at Des Moines, and that arrangements were
made with him that the cars, when they reached Des
Moines, could be used to carry the lumber on the Rock
Island road to its destination. A reading of the record
in this respect justifies this conclusion: that this
arrangement or talk was no part of the contract of
shipment from Minneapolis to Des Moines, but that
such shipment was entirely independent of any agree-
ment for cars beyond Des Moines.   It seems that, in a
talk with Tittemore about the shipments to Des Moines,
he said the cars could be used on the Rock Island line.
To sustain the order of the district court, appellee
relies on the following provisions of the law (Code,
section 1292), which is as follows: "Any railway cor-
poration, operating a railway in this state, intersecting
or crossing any other line of railway, of the same gauge,
operated by any other company, shall, by means of a
Y, or other suitable and proper means, be made to con-
nect with such other railway so intersected or crossed;
and railway companies where railroads shall be so
connected shall draw over their respective roads the
cars of such connecting railway; and also those of
any other railway or railways connected with said
roads made to connect as aforesaid, and also the
cars of all transportation companies or persons, at
reasonable terms, and for a compensation not exceed-
ing their ordinary rates."   The following is section 10,
chapter 77, Acts Seventeenth General Assembly, being
section 2039 of McClain's Annotated Code:   "It shall

be the duty of any railroad corporation, when within their power to do so, and upon reasonable notice, tc furnish suitable cars to any and all persons who may apply therefor, for the transportation of any and all kinds of freight, and to receive and transport such freight with all reasonable dispatch, and to provide and keep suitable facilities for the receiving and handling the same at any depot on the line of its road; and also to receive and transport in like manner, the empty or loaded cars, furnished by any connecting road, to be delivered at any station or stations on the line of its road, to be loaded or discharged or reloaded and returned to the road so connecting; and for compensation, it shall not demand or receive any greater sum than is accepted by it from any other connecting railroad, for a similar service." It may be said, as to section 1292, that in *Smith v. Railway Co.*, 86 Iowa, 202 (53 N. W. Rep. 128), it was held to have been repealed by implication, so far as concerns the obligation of companies to make connections, by chapter 24, Acts Twentieth General Assembly; and it is now contended by appellant that the entire section has been repealed by subsequent legislation,—not in terms, but in effect. That question we need not determine.

It is said by appellant, that the Rock Island road had no connection with either the Milwaukee road or the Des Moines, Northern & Western. By this is meant the connection contemplated by section 1292; but, if we treat the terminal system at Des Moines, as coming within the provisions of the section, so that roads connected thereby are within its operation, we may then inquire whether the facts of this case justify the order made by the district court. The order is as follows: "It is ordered and adjudged that, upon the filing of a bond by plaintiff in the sum of $500, a writ of injunction issue herein, as prayed in plaintiff's said application, with sureties to be approved by the clerk

of this court, directing and commanding the defendant, the Chicago, Rock Island & Pacific Railway Company, its officers and agents, to receive and transfer the two cars, and the lumber loaded thereon and therein, tendered by plaintiff, the Green Bay Lumber Company, over the railway of defendant, to the stations, respectively, on its railway in Iowa, set out in said application of plaintiff, and to receive and transport all such other and further cars, and lumber loaded thereon, as may be loaded with lumber of plaintiff, and under its direction and control, that plaintiff may hereafter tender for shipment over defendant's line of road, located in the state of Iowa, upon the payment or tender by plaintiff to defendant of such reasonable and proper charges for such freighting as defendant is by law entitled to demand and receive, to all of which the defendant excepts." It will be seen, that the order is not alone as to the two cars, but it applies to all cars loaded with lumber of plaintiff, and under its direction and control. We may properly assume that the court intended by the words "direction and control," as to cars in the future, only such direction and control as the company had of the cars in question; for, unless so restricted, the adjudication would reach facts and conditions not embraced in the record, nor contemplated by the court, and it could hardly be contended that such direction and control might not exist under conditions where the order should not apply. Independent of the arrangement with Tittemore that the cars of the Milwaukee Company could be used on the Rock Island line, it does not seem to us that plaintiff has a semblance of legal right to the order made, in view of the notice, by the Milwaukee Company to the Rock Island Company, not to use its cars. Without that arrangement, when the cars reached the yards in Des Moines they must have been unloaded, and we suppose no one would claim

that plaintiff had a right to tender such cars to another road. It is to be conclusively said that plaintiff had no such right. Under that state of facts, plaintiff would have no "direction and control" of the cars, so as to come within the letter or spirit of the order. The validity of the order, then, must depend largely, if not entirely, on the effect of the arrangement with Tittemore; that is, whether that arrangement would operate to bind the Rock Island Company, so that it must take such cars when tendered, against the objection of the owners. The substance of the arrangement with Tittemore is stated in the evidence of W. O. Finkbine, vice president of and acting for the plaintiff company, as follows: "Q. Will you state to the court what arrangement, if any, was made at the time this lumber was shipped in the Milwaukee & St. Paul cars, and what knowledge they had of the ultimate destination of the lumber that was shipped in their cars? A. We had a talk with Mr. Tittemore, the general freight and passenger agent of the Des Moines, Northern & Western. We wished to ship some cars in here whose ultimate destination would be points on the Rock Island, and asked if we could have the use of these cars, and he consented to that; so he knew, before the shipment was made, that the ultimate destination of the cars was not for Des Moines, but our different yards on the Rock Island road." It appears elsewhere in the evidence that Tittemore also acted for the Milwaukee Company. It does not appear in the record that the Rock Island Company, when it refused to take the cars, knew of such arrangement by the plaintiff for their use. On the other hand, it clearly appears that the Milwaukee Company had previously notified the Rock Island Company that the two cars were not to go on the Rock Island line, and that the lumber must be transferred to other cars. The situation of

the Rock Island Company, when the two cars were tendered by the plaintiff, was this: It knew the shipment over the Milwaukee and its connecting line was at an end; that, if it took the cars or lumber, it must be on a new contract of shipment. It had no notice of any agreement by which the Milwaukee cars were to be used for shipment on its line, and it had express direction not to take such cars. Nothing in the law relied on placed an obligation on the company to take the cars under such a state of facts. The conditions are out of the usual order of shipments, exceptional, and not such as were intended to be governed by the acts of the legislature.

It is said that when the company first refused to take the cars it was for different reasons, as that it did not want to do business with the Milwaukee Company, and it clearly appears that it assigned as a reason that it wanted to use its own cars for the work, and not the cars of another company. But these facts do not change its right to plead and rely on any legal excuse it had for not taking the cars, in a suit to compel it to do so. The case presents the question of the legal obligation of the company to take such cars on its line, and not the question of whether it gave valid reasons for refusing to do so when the cars were offered. It is not, as in a case of objections to proofs of loss, under a policy of insurance, where objections not urged or made may be deemed waived; for in such cases the relations are contractual, and the company seeks to avoid an obligation because of a failure to do what the contract required. In this case, the defendant company is not seeking to avoid an obligation because of a failure of the plaintiff to do what was necessary to fix the obligation on the part of defendant. It is a case in which the defendant says, in effect, there is no such obligation, and no observance of conditions by the plaintiff could create such a one, and hence there

is nothing to waive. It could not reasonably be said that it was the duty of the defendant to know or inquire into the contractual relations between plaintiff and the Milwaukee Company. So far as it could assume such relations, under the disclosures of the record, it would be that all such relations were at an end because of the limited character of the shipment, and the notice it had received. We are not in doubt, as to the two cars which constitute the basis of the action, that there was no obligation on the part of the defendant to receive and haul them on its line. This being true, there is no support for the order as to future shipments. Until the company has refused to do what the law directs, it cannot be made liable to a judgment or mandatory order for performance in the future.

We have considered this case on an assumption of facts and law largely as claimed by appellee; that is, we have treated the talk with Tittemore, as to the use of the cars, as an agreement, so that plaintiff had the right to use the cars. We have also assumed, for the purposes of the case, inferentially, if not directly, that, if the shipment of the lumber had been a through one from Minneapolis to the point of destination, the defendant company would have been under obligation to accept and haul the cars. This assumption was merely to better understand the particular question on which we have determined the case, and it should be understood that we in no manner construe the acts or parts of acts quoted or referred to as fixing obligations to haul cars when tendered in strict accord with the spirit of the acts. Such questions are of great importance, and should not be affected, inferentially, by the discussion of other questions. The judgment of the district court is REVERSED.