STATE OF IOWA, Appellant, v. CHICAGO, BURLINGTON &
    QUINCY RAILWAY COMPANY; SAME v. CHICAGO &
    NORTHWESTERN RAILWAY COMPANY; SAME v. CHI-
    CAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY;
    SAME v. CHICAGO, RHODE ISLAND & PACIFIC RAIL-
    WAY COMPANY; SAME v. SIOUX CITY & ST. PAUL
    RAILWAY COMPANY.

Railroad Commission: Authority to Make Joint Rates:
    The statute authorizing railroads to establish a tariff of joint through
    rates, to be filed with the commission, does not authorize the commis-
    sion to establish such rates. Chapter 28, Acts Twenty-second Gen-
    eral Assembly. (3)

Joint Rate, Defined: A rate for shipment over more than one road is
    a joint rate, though the order fix the part which each road shall
    charge. (3)

SAME: NOTICE OF INTENTION TO FIX, ESSENTIAL. A joint rate ordered by
    the commissioners under section 3, chapter 17, Acts Twenty-third
    General Assembly, and section 17, chapter 28, Acts Twenty-second
    General Assembly, is not binding, unless notice of intention to fix
    such rate is given as provided in said acts. (3)

Party Plaintiff: Actions by the commission to enforce its orders
    must be brought in the name of the state. (2) DEEMER, J., took no
    part.

*Appeal from Pottawattamie District Court.*—HON. H. E.
    DEEMER, Judge.

MONDAY, MAY 14, 1894.

ACTIONS in equity for the enforcement of a certain
order made by the board of railroad commissioners of
Iowa. Demurrers to petitions sustained; and plaintiff
electing to stand upon its pleading, and refusing to
plead further, its petitions in each case were dismissed
at its costs. From these rulings and judgments, plain-
tiff appeals.—*Affirmed.*

*John Y. Stone,* Attorney General, and *T. C. Daw-
son* for the state.

*J. W. Blythe, N. M. Hubbard, T. S. Wright, John
T. Fish, Wright & Baldwin* and *Smith McPherson* for
appellees.

KINNE, J.—I. In February, 1891, separate peti-
tions in equity were filed in the Pottawattamie district
court by the attorney general, at the instance of the
board of railroad commissioners of the state, and in
their name, as such commissioners, against each of the
defendants, which said petition, as finally amended
averred, in substance: That plaintiffs were railroad
commissioners of the state of Iowa. That defendant
was and is a railway corporation and common carrier
owning and operating a railroad in this state. That its
line of railway in Iowa is intersected or joined by the
lines of other railways; and it is necessary, proper and
convenient, in facilitating transportation, for freight to
be shipped over both lines, for which purpose a trans-
fer of freight from one line to the other at the place of
intersection is necessary. That in conformity with
chapter 28, Acts Twenty-second General Assembly,
the said board, during the year 1888, made for the
railway companies of this state, including the defend-
ants, a schedule of reasonable maximum rates of
charges for transportation of freight and cars. That
before fixing said rates under section 17, chapter 28,
Acts Twenty-second General Assembly, said commis-
sioners published notice, as required, and fixed a time
and place, when and where they would proceed to fix
and determine said rates; the place being the office of
the commissioners, at the capitol, in Des Moines, and
the time being the ———— day of June, 1888, and less
than sixty days before said act took effect. That at
said time and place the commissioners afforded all
firms, persons, corporations, and common carriers an
opportunity to be heard. That after making such
maximum rates they caused notice to be given as
required by law. That on October 9, 1890, said origi-
nal schedule of rates was so revised and modified that
there was in force in Iowa, as the maximum rates
adopted, fixed, and established by said commissioners,
the rates adopted in June, 1888, and on October 9,

1890. That on making said revision they caused notice to be published for two consecutive weeks in a public newspaper in the city of Des Moines, in this state, stating the date of the taking effect of said rates. That, prior to the promulgation of the order hereafter referred to, persons interested demanded and requested of the railway companies doing business in this state, including the defendant, to establish reasonable joint through rates for the transportation of freight between points on their respective lines within the state, and to receive and transport freight and cars o ver such roads as the shippers might direct. That said companies and defendant have failed and refused, on said demand, and before the promulgation of said order, to establish through joint rates, or to establish and charge reasonable rates for such through shipments. That persons interested did make application to the board of railroad commissioners to establish joint rates, and upon such application said board did on July 31, 1890, formulate and fix the following reasonable schedule, and give the following notification thereof: "July 31, 1890, the commissioners made the following ruling, to apply to all shipments of freight, of any kind whatsoever, originating and terminating within the state, under the commissioner's schedule of reasonable maximum freight rates heretofore established, or that may be hereafter established: Iowa Freight Rates. Revised Schedule of Reasonable Maximum Rates for the Transportation of Freight within the state of Iowa. Notice is hereby given that in pursuance of the Acts of the Twenty-second General Assembly of the state of Iowa, and of the Acts of the Twenty-third General Assembly of the state of Iowa, the schedule of reasonable maximum rates of charges for the transportation of freight within the state of Iowa now in effect on the respective lines of railway of said state have been revised and amended by the adoption of the following:

From and after the fifteenth day of August, 1890, the following railroad companies engaged in the business of common carriers, and doing business within the state of Iowa (here follow names of all railroad companies in Iowa), shall be governed by the following rule in making rates for freight passing over two or more lines within the state: The maximum rate of freight to be charged by any railroad company receiving business from a shipper at a station on its line within the state of Iowa, destined to a point within the state of Iowa on another line of railroad, or receiving freight originating within the state of Iowa on the line of another railroad, and destined to a point within the state of Iowa on its' line, shall be eighty per cent. of the Iowa tariff rate, which becomes effective August 1, 1890.   *   *   *   The rates fixed by the commissioners, June 18, 1890, are hereby revoked." That printed copies of the above order and schedule were sent to and received by all railway companies doing business in this state upon August 4, 1890. That the application and said notification were made after said joint rates were promulgated.   August 22, 1890, the following notice was sent to all railroads doing business in Iowa:   "On July 31, 1890, a revised schedule of rates was issued from this office, applying to Iowa freight received from or delivered to another line of railway.   Such schedule became effective on the fifteenth instant; due notice of the same having been given as required by law, and a copy of which schedule, order, and notice is inclosed herewith.   Up to this date, no information has been received at this office as to whether it is your intention to comply with the rates so established.   Your attention is again directed to this matter, and you are called upon to obey said order of the commissioners, and to immediately put in force said schedule.   Will you advise the commissioners, within ten days from the date hereof, as to whether

you are applying this schedule to the business of your line?'' That said railroads did not agree upon a division of charges among themselves, nor did they put into effect said schedule. That, on October 9, 1890, the defendant and all other railroad companies in the state having failed to establish joint through rates, said board made and promulgated an order in the same form as is heretofore set out. That said order was published as required by law. That said companies, including defendant, refuse to comply therewith. That said order, and the rates provided therein, are just, reasonable and lawful. The second count sets out, largely, the same facts, and bases the order made on power claimed to have been given under Acts of the Twenty-second General Assembly, chapter 28, and section 1, chapter 17, Acts of the Twenty-third General Assembly. The prayer is that a decree be entered declaring said order, the rates established thereby, and the schedule of maximum rates, as modified thereby, to be just and reasonable, and that a mandatory injunction issue, compelling obedience to and compliance with said order. April, 1, 1893, the state was substituted in each case as plaintiff. Each of the defendants demurred for many reasons, averring that the facts stated did not show that plaintiff was entitled to the relief prayed; that the state was not the proper party plaintiff; that there was a defect of parties defendant; that the court had no jurisdiction of the subject of the action; that no notice was given of the promulgation of the rates in question, as required by law; that said board did not fix joint rates for the several companies forming a through line; that no notice was given of the intention to make such order, nor any application made therefor; that reasonable time was not given defendant, after said rates were promulgated, to agree upon a division of charges, but in the first instance a division was made of a through rate, allotting to de-

fendant a portion thereof, contrary to law; that there is no allegation that any demand was ever made upon defendant to put in rates for the transportation of freight delivered to it at a station on its line, and destined to a station on the line of another road; that the exclusive remedy for the wrongs complained of is provided by chapter 17, Acts of the Twenty-third General Assembly, and the board did not proceed in conformity therewith; that the order made is not enforceable in equity; that the law and order impair the obligation of contracts, and are in violation of section 10, article 1, of the constitution of the United States, and of section 21, article 1, of the constitution of the state of Iowa; that said act and order are in violation of sections 9 and 18, article 1, of the constitution of the state of Iowa, and of article 14 of amendments to the constitution of the United States, in that they seek to compel defendant to enter into contractual obligations with other companies against its will, without due process of law, and without just compensation, and in other respects; that there is no allegation in the petition that the commissioners ever fixed a joint rate for shipment over defendant's line, and any line connected therewith; that the schedule sought to be enforced fixes for defendant a lower rate for identically the same service than is fixed in the schedule claimed to be a schedule of reasonable rates; that the schedule is discriminative; that the act confers judicial powers on the commissioners, contrary to law; that it is an attempt to regulate commerce between states, and is void. The court sustained the demurrers; and plaintiff electing to stand upon its pleadings, and, refusing to further plead, the petitions were dismissed at its cost.

II. It is contended that the state is not the proper party plaintiff; that the action should be prosecuted in the name of the commissioners. In answer to this

claim, it may be said that the ruling in the case of
*Smith v. Railway Co.*, 86 Iowa, 202, 53 N. W. Rep. 128,
was intended to settle the practice in all cases instituted
by the board of railroad commissioners to enforce or-
ders and rulings made by them, and we see no good
reason for making a distinction between that case and
those at bar.

III.   Some preliminary questions, which do not
involve the validity of the law, are raised, which must
be determined at the outset, and which, to our minds,
are decisive of these cases:

*First,* it is conceded that no notice of an intention
to fix these rates was ever given by the railway com-
missioners to defendants.   On the part of the state, it
is contended that the schedule of rates in controversy
is but a revision of the schedule of reasonable maximum
rates fixed and promulgated in 1888, so that no such
notice was necessary.   The defendants contend that
the schedule of 1890 is in no sense a revision of the
schedule of 1888, but an independent and original
schedule.   If the latter claim is correct, it seems to be
conceded, and is undoubtedly true, that the giving of
notice of an intention to fix such rates, in advance of
making them, was a requirement of the law absolutely
necessary to be complied with, in order to confer juris-
diction on the board to fix the rates in controversy.   It
will be observed that one count of the petition is
based on the thought that under the act of 1888, and
the first section of the act of 1890, the commissioners
had power to establish joint rates, and that the schedule
in controversy was made without regard to, and not
by virtue of, the subsequent provisions of the act of
1890.   If a joint rate could be established under the
act of 1888, as seems to have been attempted, then
the failure to give notice is justified by the fact that
that act only required such notice when the original
schedule was made, not of a revision thereof; and if

the schedule in controversy is merely a revision of that
of 1888, made by virtue of the power given in said act,
the objection that no notice of an intention to make it
was given would not be well taken.   The determination
of the question, then, as to whether notice of an inten-
tion to fix the rates and make the schedule in question
was an act essential to confer jurisdiction on the
board to make it, involves a finding as to the power of
the board to make a joint rate under the act of 1888.
The act of 1888 provides only for the fixing of single
rates for each road, while the act of 1890 makes pro-
vision for the establishment of joint rates applicable to
two or more lines of road.   There is nothing in the act
of 1888, chapter 28, touching joint rates, except the fol-
lowing provision in section 7 of that act: "And in cases
where passengers and freight pass over continuous lines
or routes in this state operated by more than one com-
mon carrier and the several common carriers operating
such lines or routes, have established joint tariffs of
rates or fares or charges for such continuous lines or
routes, copies of such joint tariffs shall also in like
manner be filed with said commissioners," etc.   This
section contemplates that such joint rates may be agreed
upon by the railway companies, and in such case pro-
vision is made for the commissioners to make publica-
tion thereof.   Nowhere in that act is any power con-
ferred to make joint rates.   But it is claimed that such
power is conferred by the first section of the act of 1890,
in connection with the act of 1888.   We are unable to
see that the first section of the act of 1890 confers any
new or additional powers upon the board of railway
commissioners.   That section reads: "That chapter 28
of the Acts of the Twenty-Second General Assembly
be and the same hereby is amended as follows: That
said chapter 28 of the Acts of the Twenty-Second Gen-
eral Assembly shall not be construed to prohibit the
making of rates by two or more railroad companies for

the transportation of property over two or more of their respective lines of railroad within this state, and a less charge by each of said railroad companies for its portion of such joint shipment than it charges for a shipment for the same distance wholly over its own line within the state, shall not be considered a violation of said chapter 28 of the Act of the Twenty-Second General Assembly, and shall not render such railroad company liable to any of the penalties of said act, but the provisions of the section shall not be construed to permit railway companies, establishing joint rates, to make by such joint rates any unjust discrimination between the different shipping points or stations upon their respective lines between which joint rates are established, and any such unjust discrimination shall be punished in the manner and by the penalties provided by chapter 28 of the Acts of the Twenty-Second General Assembly." Now, it will be seen that this section in no way relates or refers to the railway commissioners, nor does it increase or diminish their powers. It simply provides that the companies may by agreement make a joint through rate over two or more lines, and each charge therefor a less sum than is charged for a like shipment for the same distance wholly over its own line within the state. It follows, then, if the power to establish a joint rate exists at all outside of the provisions of the subsequent section of the act of 1890, it must be by virtue of the act of 1888 alone. It is said by the attorney general, in his argument: "The latter sections of the act of 1890 give to the commissioners the power, perhaps, to make such a through, continuous rate. This power, if it exists, has, however, not been attempted to be exercised. * * * The first section only amends the law of 1888 in respect of discrimination. The latter sections confer the power to adopt a new method of procedure to obtain an object which can also be attained under the powers previously existing." The argument,

then, is that the order is so made as that it does not prescribe a joint rate, but an independent rate for each road; hence, it was properly made, under the Acts of 1888, without notice, being a mere revision of the schedule made in 1888. We do not think this claim is well founded. A rate fixed to govern two or more roads, as to a shipment which passes over all of them, while in one sense a separate rate as to each, in that it fixes the rate at a certain per cent. of what each might charge for a like shipment for the same distance wholly over its own line, is nevertheless, in legal effect, a joint rate, and must be treated as such. It is said in *Railway Co. v. Dey*, 82 Iowa, 312, 48 N. W. Rep. 98: "And it is equally plain that the joint rates of charges cover all the charges for the transportation over two or more roads, as though they constituted one road, the rates fixed determining the whole charges. It is also plain that these joint rates consist of the separate rates of each separate road."

Now, the rate fixed by the schedule in question was for a through shipment over two or more lines of road. That the form of the order provided that each road constituting the one line should only charge eighty per cent. of a certain other rate for the same kind of traffic did not make the rate any the less a joint rate, because the rate and schedule in question applied only to through joint shipments; and a rate applicable only to a continuous shipment over two or more lines of road must, of necessity, be a joint rate, no matter what the form of phraseology of the order fixing it may be. Any other holding would result in authorizing the railroad commissioners to establish, promulgate, and have in effect, at the same time, and applicable to the same road, two different schedules of rates for the same identical service. Suppose two or more railroad companies mutually agreed that, for all through shipments over their respective lines, each company should have,

as its proportion of the entire charge, eighty per cent. of what it might lawfully charge for a like shipment for the same distance wholly over its own line. Could there be any question that a shipment made over such lines, and under such circumstances, would be a joint through shipment, and the rate a joint through rate, regardless of the plan by which division between the several roads of the entire sum to be charged should be made? The law expressly provides for just such agreements. Then why is such a rate, if made by the commissioners, any the less a joint rate than it would have been if entered into voluntarily by the interested companies? The character of the rate in controversy, as to being a joint rate or a local rate, must be determined from the shipment it is applicable to; and, if to a shipment which is to be continuous over two or more lines of road—that is, a through shipment—that fact fixes its character as a joint rate. The law did not intend that the commissioners might fix in the first instance a rate for each road which should be *prima facie* evidence of a reasonable maximum rate, and thereafter, without setting aside such rate, fix another less rate for the same service, and over the same road, which should also be *prima facie* evidence of a reasonable maximum rate therefor. The statute, as we have seen, authorizes the several companies to agree upon joint rates. The authority thus granted them is not to make rates independent of each other, and having no relation to another line of railway, and at a less rate than is charged over its own line of railway for the same service, but the rates are to be joint rates over two or more lines of road. Now, the eighty per cent. which the commissioners' order authorizes each road to charge simply determines its proportion of a joint rate, not a local rate; and the order itself is a joint rate order, applicable, as we have seen, to continuous, through shipments over two or more lines of road. By

the act of 1890 (section 3, ch. 17) it is provided that the board, in making joint rates, "shall be governed, as near as may be, by all the provisions of chapter 28, Acts of the Twenty-second General Assembly." In section 17 of said chapter, it is provided "that, before finally fixing and deciding what the original maximum rates and classification shall be, it shall be the duty of the railroad commissioners to publish ten days' notice in two daily papers published in Des Moines setting forth in such notice that at a certain time and place they will proceed to fix and determine such maximum rates and classification; and they shall at such time and place as soon as practicable afford to any person, firm, corporation or common carrier who may desire it, an opportunity to make an explanation or showing or to furnish information to said commissioners on the subject of determining and fixing such maximum rates and classification." Now, clearly, the rate in controversy, being, as we hold, a joint rate, and not a revision of the schedule of 1888, is an original rate, independent of the rate fixed in 1888; and the board have no power to fix and adopt the same without giving the notice provided by law, applicable to an original rate. No such notice was given. The giving of the notice is jurisdictional, and hence the rate fixed without it is not binding—is, in fact, of no validity whatever.

IV. Many other questions are elaborately discussed by counsel. As, however, for the reason heretofore given, the judgments below must be affirmed, and the same questions may not arise on another trial, we need not discuss them. Without determining whether there is a defect of parties defendant, it may be said that the question may not be free from doubt. AFFIRMED.

DEEMER, J., took no part.