P. W. PRITCHARD et al., Appellants, v. J. A. MAGOUN, County Treasurer, et al.

**Taxation to Aid Private Toll Bridge:** CONSTITUTIONAL LAW. Acts Twenty-first General ·Assembly, Chapter 13, Section 1, as amended ·by Acts Twenty-fifth General Assembly Chapter 19, authorizing a city by vote to levy a tax to assist a domestic private corporation, organized for pecuniary prcfit, in constructing a toll bridge to be used as a highway and for railway purposes, is not unconstitutional as a taking of private property for public use without compensation, such bridge being for a public purpose and as such of such great,importance to the public.

**Australian Ballot Law:** *Not applicable to special elections to vote tax.* Acts Twenty-fourth General Assembly, chapter 33, section 1, providing that all elections for public officers shall be held as thereinafter provided, setting forth what is known as the "Australian Ballot Law," and section 2 defining the term "general election" also .providing that the term "city election," as used in the act, shall apply to any municipal election, does not apply to a special election held by a city to levy a tax in aid of a. highway bridge.

PUBLICATION OF NOTICE: *Hotels.* The posting of a notice of election in a city hotel is a sufficient compliance of the law which requires. such notice to be posted in a public place.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, OCTOBER 18, 1899.

P. W. Pritchard and sixty-eight other residents, property owners, and taxpayers in the city of Sioux City bring this action against J. A. Magoun, county treasurer, C. A. L. Oleson, county auditor, the Combination Bridge Company, and the city of Sioux City, to declare a certain tax upon the property of plaintiffs in aid of said bridge company illegal and void, and to restrain said county officers from collecting said tax. Issues were joined as to the legality of the said tax, and upon full hearing decision was rendered dismissing plaintiff's petition. Plaintiffs appeal.—*Affirmed.*

*A. & J. A. Van Wagenen* for appellants.

*Taylor & Burgess* and *F. E. Gill* for appellees.

GIVEN, J.—I.    Section 1, chapter 13, Acts Twenty-first General Assembly, is as follows: "Section 1.    That taxes not to exceed five per centum on the assessed value of any incorporated city having over five thousand inhabitants, may be voted to construct, or to aid any company which is or may be incorporated under the laws of the state of Iowa, in the construction of a highway bridge, commencing or terminating in such city, across any navigable boundary river of the state of Iowa."    The sections following provided the manner in which the vote should be taken, and the tax levied, collected, and paid over.    Chapter 98 of the acts of the same general assembly made said act applicable to cities incorporated under special charter.    Chapter 19, Acts Twenty-fifth General Assembly, amended said section 1 by inserting the words, "or a combination bridge suitable for use both as a highway and for railway purposes," and by striking out and inserting elsewhere to correspond with said amendment.    The defendant bridge company is a corporation for pecuniary profit, organized under the laws of Iowa, with the following, among other, powers enumerated in its articles, namely: "To buy, hold, lease, own, construct, and maintain a railroad and wagon bridge across the Missouri river at Sioux City, Iowa, and particularly to purchase, complete, construct, and maintain the bridge now in process of construction by the Pacific Short Line Bridge Co. and Mo. R. Bridge Co. and to operate same and construct railroad tracks thereon; to own, lease or operate trains, engines and cars thereon and to provide for the transportation of vehicles, persons and property of every kind and character upon and across the same for just compensation, and to construct and operate, own and maintain approaches to the said bridge and the railway track thereon, and to operate steam, electric and other

railways upon the said bridge and approaches, and to operate the same for all purposes for just compensation." A petition therefor, signed by more than a majority of the resident freehold taxpayers of the city, having been presented to the city council of Sioux City, said council called a special election to vote on the question of levying a tax in aid of said bridge company for the construction of a combination bridge over the Missouri river from a point in said city to a point opposite on the Nebraska shore, said election to be held on the 26th day of June, 1894. At said election, of the 3,125 votes cast, 2,264 were in favor of granting the aid, and thereupon the tax was duly certified to the county auditor, and levied by the board of supervisors. On January 21, 1896, said city council passed a resolution finding that the bridge company had compiled with all the conditions upon which said aid was voted, and authorized the mayor and clerk of the city to so certify to the county tresurer. On December 21, 1895, the plaintiffs brought this action. The foregoing statement of the proceedings following the petition of the taxpayers is incomplete, but sufficient for the purpose of the questions argued.

II. Appellants say: "This case is brought to this court by the plaintiffs, because they believe that taxes levied upon the people to assist a private corporation in building even a public highway, for which it charges tolls for its own profit, is unjust, and wrong, and in violation of the constitution. If this proposition is not correct, we concede we have no standing in this court on the constitutional objection to these taxes. Our contention is that *Hanson v. Vernon* [27 Iowa, 28] is better law than *Stewart v. Board* [30 Iowa, 9]. We are not here asking the court to overrule the latter case, but are objecting to carrying the doctrine any further." With this concession, we have only to inquire whether it will be carrying the doctrine of *Stewart v. Board,* 30 Iowa, 9, any further to apply it in this case. In that case it was held that chapter 102, Acts Thirteenth Gen-

eral Assembly, was not in conflict with our state constitu-
tion. Section 1 of said act provides as follows: "That it shall
be lawful for any township, incorporated town, or city to aid
in the construction of any projected railroad in this state as
hereinafter provided." Following this were provisions as
to taking the vote, and levying, collecting, and paying over
the tax, if voted, similar to those contained in the statute
under consideration. The construction of this combination
bridge over the channel of the Missouri river for the uses
for which it was constructed is as much a public purpose as
the construction of a railroad upon the surface of the earth.
The fact that this bridge company has the right to charge
for the use of its bridge in the way of tolls does not take
away the public character of the improvement. Railway
corporations are organized for pecuniary profit, the same as
this bridge company, and derive their profit as it does,—by
charging for the services rendered. So far as this constitu-
tional question is concerned, we discover no difference in
principle between these two acts, and know of no reason why
the rule announced in *Stewart v. Board* does not apply alike
to both. The construction of this bridge is shown not only
to be for a public purpose, but to be of great importance to
the public and private commercial and property interests
of Sioux City and its taxpayers. We are "not carrying
the doctrine any further," as announced in *Stewart v. Board,*
when we say, "It is directly applicable and controlling on the
question under consideration."

III. Appellants' next contention is that said election
was not held in compliance with what is known as the
"Australian Ballot Law," and is therefore void. That law
(section 1, chapter 33, Acts Twenty-four General
Assembly), is as follows "That in all elections to be
held after Nov. 1st, 1892, in the state for public offi-
cers (except those elected at school elections), the voting shall
be by ballots printed and distributed at public expense as
hereinafter provided, and no other ballot shall be used." This

was not an election for "public officers," and, if nothing further appeared, it would clearly not come under that law. Section 2 defines the term "general election" as used in the act, and concludes as follows: "The term 'city election' shall apply to any municipal election held in a city or incorporated town." And it is upon this language that appellants rest their claim that this special election comes under said chapter 33. The elections provided for in said chapters 102 and 13 were designated throughout as special elections, and it is evident from all the provisions of said chapter 33 that it is not intended to apply to such special elections.

The only other complaint urged in argument against the validity of this special election is that notice thereof was not given as required, for that "two of the required notices were posted in hotels." The law required such notices to be published in a newspaper; "also by posting copies of said notices in five public places in such incorporated city."

The argument is that in this day and age, and particularly in large cities, hotels are not public places; but we do not concur in this view, and conclude that notice was given as required.

IV. The defendant bridge company has gone forward in good faith in compliance with the condition upon which the aid was voted, and in reliance thereon, and completed, and opened to public use, a valuable and expensive bridge. It carried forward this work to completion with the knowledge of all, or nearly all, of the sixty-eight plaintiffs, without, so far as appears, any intimation that its right to this aid would be questioned, up to the commencement of this suit. Whether appellants should be estopped from questioning the legality of that tax we do not determine, as we are in no doubt but that, following *Stewart v. Board*, the law under which it was voted is constitutional, and was substantially observed in the voting, levying, and collecting of said tax. If any doubt exists as to the legality of the pro-

.ceedings, they arc obviated by chapter 208, acts Twenty-sixth General Assembly, legalizing that special election.—
Affirmed.