J. R. BLAIR v. THE SIOUX CITY & PACIFIC RAILWAY COM-PANY and the CHICAGO & NORTHWESTERN RAILWAY COM-PANY, Appellants, H. HOLLOWAY, Appellee, v. SAME Appellants, A. BROWN v. SAME Appellants, and G. W. MACOY, Appellee, v. SAME Appellants.

Voluntary Joint Rates: DISCRIMINATION: *Pleading.* Acts 1890, chapter 17, section 1 is constitutional and prohibits railroad companies who voluntarily establish joint rates from making any unjust discrimination in such rates between the different stations on their respective lines, while Section 5 prohibits any unjust and unreasonable charge. Under these statutes, a petition to recover the penalty provided in such act, which alleges that defendant railroad companies established joint rates between all stations on their respective lines in the state, that they unjustly discriminated between the different points on their lines, to plaintiff's damage, and that the rates charged plaintiff were unjust and unreasonable, states a cause of action; and the fact that it contains further allegations showing the different rates charged between different points does not make the action one based solely on the fact of such differences as establishing the unjust or discriminating character of the rates charged.

SAME. When two railroad companies voluntarily enter into an agreement for joint rates, which covers all stations on their lines in the state, they virtually create a new and independent line, and become subject to the law preventing unjust discrimination and unreasonable exaction.

DISCRIMINATION: *Statutes.* Section 24, Acts Twenty-second General Assembly which defines charging one person more than another for hauling like freight a like distance over the same road in like direction to be unjust discrimination, is not exclusive and, notwithstanding it, such discrimination may be made out by charging differently for hauling like freight the same distance east and west of a junction point.

SAME. Where a petition alleges that joint rates were established by two railroad companies for all stations on either line, the rates charged for the same class of goods over like distances of road may be considered, not only in arriving at the solution of the question of unjust discrimination, but also in determining whether a rate charged was unreasonable; and an allegation that

VOL. 109 Ia—24

a lower rate was charged for transporting like goods over the same distance of road than was charged plaintiff makes a *prima facie* case of unjust discrimination.

TREBLE DAMAGES: *Interest*. Interest is not recoverable on the treble damages imposed by the statute as a penalty for unjust discrimination in charges by a railroad company.

Interrogatories: CORPORATIONS. Even prior to the adoption of the Code of 1897 (which expressly provides therefor) a corporation like an individual defendant could be required to answer interrogatories attached to a petition.

LADD AND DEEMER J. J. dissenting.

SAME. Where interrogatories attached to a petition to be answered by a corporation defendant were answered by an officer of defendant by stating that he had no personal knowledge of the matters inquired about, and knew of no other officer who had such knowledge, and the facts required were such as could be readily ascertained from the books and records of the corporation, such answers were properly stricken out as uncandid, and an attempt to avoid a compliance with the law.

AMENDMENT TO PETITION. Where an amendment to a petition is permitted to be filed by the court, the plaintiff may attach interrogatories thereto, though the statute mentions the petition and not an amendment thereto in connection with attaching interrogatories.

Appeal: OBJECTION BELOW. That the affidavit to the pleading demanding answers to interrogatories attached was made by the attorney of the demanding party may not be first urged on appeal.

*Appeal from Pottawattamie District Court.—*HON. N. W. MACY, Judge.

WEDNESDAY, OCTOBER 18, 1899.

ACTION to recover alleged unreasonable, extortionate, and illegal freight charges on hay shipped by plaintiffs over defendants' lines of road from Whiting to Council Bluffs. Judgment for plaintiffs, and defendants appeal.—*Modified.*

*Hubbard, Dawley & Wheeler* for appellants.

*Harl & McCabe* and *Spencer Smith* for appellees.

DEEMER, J.—Between January 1, 1889, and the bringing of these suits, in 1893, plaintiffs shipped many cars

of baled hay from Whiting and Blencoe, Iowa, stations on the line of the Chicago & Northwestern Railway. The original petitions alleged that defendants charged, demanded and received of plaintiff for the said shipments the sum of two local tariffs of said lines from Whiting (or Blencoe) to Missouri Valley, and from Missouri Valley to Council Bluffs; that at and about the time said shipments of baled hay were made..*..*..*..the defendant corporations were charging on shipments of baled hay from said stations of Whiting [and Blencoe] to points on the Chicago & Northwestern Railway east of Missouri Valley, and for like distances from the point of shipment, as Council Bluffs, the joint-rate tariff fixed by the board of railway commissioners of the state of Iowa, which joint-rate tariff was less for like distances than the sum of the two locals charged by these defendants on the shipments made about the same time of the same merchandise, and for like distance, to points on the defendants' roads." It then stated that the charge of the sum of the two local tariffs as aforesaid was in excess of the joint rate for like distances as fixed by the railway commission; that said charge was a violation of the joint-rate law, and constituted an unjust discrimintion, and was an unreasonable and extortionate charge; that plaintiff was damaged, by reason of said extortionate and unjust charges and discrimination and charges in excess of the joint rates fixed by said railway commission, a certain sum, which was stated; that more than fifteen days before the commencement of this action written notice and demand were made upon each of said defendants for the amount of damages accruing to plaintiff on each of said shipments, and defendants have failed to pay the same, whereby they have become liable to plaintiff in three times the amount of the said damages, and judgment is claimed for said sum. The defendants demurred to these petitions upon the ground that there was no law requiring the defendants to make a joint rate for

the shipment of freight over their lines; that the provisions
of chapter 28, Acts Twenty-second General Assembly, and
of chapter 17, Acts Twenty-third General Assembly, are
unconstitutional, being in violation of the federal and state
constitutions; that the board of railway commissioners had
no authority to fix a joint rate for shipments over the defend-
ants' lines of railway; that it was not unlawful for each of
the defendants to charge its regular local tariff rate for trans-
porting said hay; that it was not unlawful for the defend-
ants to charge in the aggregate for said shipments the sum
of two local tariffs on said lines; that it was not averred
that the board of railway commissioners had given notice to
defendants of the hearing at which the alleged joint rates
were fixed; and that there is no joint liability of the defend-
ants shown by the petition. Said demurrer was overruled,
and thereafter each plaintiff filed an amendment to his peti-
tion, alleging that the shipments which have been referred
to in the petition herein were through shipments from Whit-
ing to Council Bluffs; that through billing was issued there-
for, and a through rate for the transportation thereof fixed,
demanded and received the defendants; that the said rate so
fixed, demanded, and received by the defendants for trans-
portation of said shipments equalled the sum of the two local
tariffs from Whiting to Missouri Valley, and from Missouri
Valley to Council Bluffs; and that said charge was unreason-
able, unjust, extortionate, and discriminating, in excess of
the joint rate fixed by the board of railway commissioners of
the state of Iowa, and in excess of the joint rates fixed and
charged by the defendants for joint shipments of like char-
acter for like distances on their respective lines at or about
the time of the shipments in controversy herein, as is more
fully alleged in plaintiff's original petition. To the petition as
amended the defendants again demurred for substantially
the same reasons set out in their first demurrer. Before
this demurrer had been ruled on the plaintiff again
amended his petition, alleging: That the through billing

of the hay was made by defendants in pursuance of a contract or agreement entered into between defendants for the through transportation of freight over their respective lines, and establishing between them joint through rates for such transportation of freight from points on the Sioux City & Pacific Railway to points on the line of the Chicago & Northwestern Railway, and from points on the latter railway to points on the former railway, and providing for a division of such through rates in proportion to the mileage of said shipments over each of said respective lines; said contract covering all points in Iowa on their respective lines. That said freight was received in pursuance of said agreement by said Sioux City & Pacific Company; it, under said contract, fixing a through rate therefor, and collecting the same, and thereafter making division thereof with its co-defendant pursuant to said contract. That said through joint rate on said shipments so charged to this plaintiff exceeds eighty per cent. of the sum of the two locals from the point of shipment to Missouri Valley, and from Missouri Valley to Council Bluffs. That during the entire period covered by the shipments referred to, the defendants, on their through shipments to points on the line of the Chicago & Northwestern Railway east of Missouri Valley, charged, as a through joint rate, eighty per cent. of the two local tariffs from the point of shipment to Missouri Valley and from Missouri Valley to the point of destination. The defendants filed a motion to strike a part of this amendment. The demurrer and the motion to strike were overruled. A motion which had previously been made for the production of books and papers was, by agreement, sustained. Thereupon the defendant the Chicago & Northwestern Railway Company filed its answer, admitting that plaintiff shipped the hay claimed at and for the rates, charges, and prices stated in the petition. It admits that on joint shipments over the Sioux City & Pacific Railway from Whiting to Missouri Valley, and thence east from the Valley over the Chicago & Northwestern Railway, they charged eighty per cent. of

the sum of the two locals, as alleged; admits the service
of the written notice and demand; admits that plaintiff's
shipments were made on a through billing, by virtue of an
agreement between the defendants, and that the rates charged
were divided between them in pursuance of such agreement;
admits that said joint through rate on said shipments so
charged the plaintiff for a greater portion of the time
exceeded eighty per cent. of the sum of the two locals; that
from July 9, 1890, to April, 1893, the rate was less than
eighty per cent. of the two locals; admits that during the
entire period covered by the shipments of plaintiffs, the
defendants, on their through shipments to points on the line
of the Chicago & Northwestern Railway east of Missouri
Valley charged as a through joint rate eighty per cent. of
the two local tariffs from the point of shipment to Missouri
Valley and from Missouri Valley to the point of destination;
avers that the rate charged plaintiff was less than the sum
of the two local tariffs between the points heretofore men-
tioned, and that on July 9, 1890, the defendants put in
operation a special joint tariff on baled hay of five cents four
and four-tenths mills, and all shipments of plaintiff after
that date were made under such joint tariff; avers that dur-
ing all of the time of the shipments made by the plaintiffs,
as alleged by him, the defendant had the lawful right to
charge its local tariff from Missouri Valley to Council Bluffs
on said shipments; and denies that the charge made and
collected of the plaintiff was unlawful, or that it constituted
discrimination, extortion, or an unreasonable charge; avers
that from February, 1889, the distance tariff and classifica-
tion made by the Iowa railroad commissioners have been
in force over the defendant's lines, and that it has not made
any charge in excess thereof, and that such rates were reason-
able by force of the statutes of the state. Each plaintiff filed a
further amendment to his petition, alleging that the tariff
charged by the defendants on shipments to points on their
lines of road east of Missouri Valley was less than the sum
of the two locals, and less than the tariff charged plaintiff

on shipments of the same kind for like distances to Council
Bluffs; that the amounts charged to plaintiff on such ship-
ments referred to in the petition exceeded the tariff charged
for like shipments at and about the same time, and for like
distances, to points east of Missouri Valley, by the amount
claimed as overcharge in the petition.    The defendant filed
a motion and a demurrer to the petition and amendments.
The demurrer was, in effect, the same as the one before
referred to.    Prior answers filed were withdrawn, and the
demurrer was overruled, whereupon the defendant refiled
its answer.    The defendant also answered in denial of the
facts stated in the last amendment.    Thereupon the plain-
tiff filed a further amendment as a substitute for a prior
one, and in substantially the same language, which plead-
ing was verified by one of the plaintiffs' attorneys, and
there were annexed thereto interrogatories to be answered
by the defendants.    Thereafter defendant moved to strike
said amendment, which motion was overruled, and the defend-
ant was given ten days in which to answer the interroga-
tories.    Defendant then filed an answer to said amendment,
denying the allegations therein contained.    On the same
day, defendant filed objections and exceptions to the inter-
rogatories, because the same were not attached to plaintiff's
original petition; because the statute did not require a cor-
poration to answer interrogatories attached to pleadings;
because all of them were immaterial, irrelevant, and incom-
petent.    This motion was overruled, and the defendant
allowed ten days to answer interrogatories.    After the expira-
tion of the ten days, plaintiff moved to strike the answer
from the files because the defendant had failed and refused
to conform to the order and rule of court requiring
them to produce books and papers, and because they had
neglected and refused to answer the interrogatories.    There-
after the court granted the defendant leave to answer the
interrogatories without prejudice to plaintiff's motion to
strike, whereupon the defendant filed its answers to said
interrogatories.    Nearly all of the answers were in
the following language:    "I do not know; and I
further state that I know of no officer of the defend-

ant corporation that has actual, personal knowledge of the facts called for in this interrogatory." These answers were sworn to by the general manager of the defendant, who says that "the information required by the said interrogatories is not within my actual, personal knowledge, nor the actual, personal knowledge of ·any officer of this answering defendant corporation." Thereupon the plaintiff moved to strike said answers, because they were a manifest and palpable evasion and disregard of the order of the court; because the answers are shown to be made by a person having no knowledge from which to make answer; said answers do not pretend to give the information and knowledge of the defendant with reference to the matters that were the subject-matter of the interrogatories. This motion was sustained, and the defendant ordered to make full and candid answers to said interrogatories before August 27, 1895. The defendant then filed an answer to said interrogatories, averring that its answers therefore filed were full, candid, and true, and reiterated the same as its answer. Another motion to strike this last answer was filed by plaintiff because the answer was immaterial, irrelevant, and flippant. Thereafter the court entered an order striking the amended answer to interrogatories from the files, and also ordered that, as defendant had failed to file full and candid answers to the interrogatories, as required by the court, in default thereof the answer filed in the case by the defendant should be quashed, and stricken from the files. Thereafter defendant was adjudged to be in default, and on the pleadings and proof adduced by the plaintiff a judgment was entered in each case against the defendant, which was ordered to draw six per cent. interest from its date. The defendant excepted to the judgment, and to all rulings made against it.

No claim is made that the petition, as amended, states a cause of action under the common law, and it must therefore be tried by the statutes of this state relating to extortion and discrimination. When the action was commenced,

the case of *State v. Sioux City & St. P. Ry. Co.* 90 Iowa,. 594, had not been determined, and the plaintiffs evidently sought to recover for violation of the joint rates fixed by the railway commission. Many of the amendments to the petitions were filed after that opinion was announced, and from them it appears that plaintiffs sought to recover for unreasonable and extortionate exactions,. and by reason of the fact that the defendants had voluntarily established joint rates over their lines of road, and had charged plaintiffs a rate in excess of that rate on like shipments which were made at the same time to other points. for a like distance over their lines of road. In the case last above referred to it was expressly held that the joint rates established by the railway commission were invalid because no notice was given to the companies in interest, as required by statute. It is also said in that case that there is nothing in the act of the Twenty-second General Assembly touching joint rates except the provision as to filing and publishing the schedule adopted by the roads. This language had reference solely to the powers of the railway commission to fix rates, and not to the effect to be given to joint rates voluntarily established. Counsel for appellees. concede that chapter 77 of the Acts of the Seventeenth General Assembly does not apply to joint rates. The questions. that we have for solution, then, are: Is there any law of this state prohibiting extortion and discrimination when joint rates are voluntarily established between two or more railroads? Is it lawful for railway corporations that have voluntarily established joint rates to charge more for a shipment made over one of the lines to a point west on another than it does for a like contemporaneous shipment from the initial point to a point east of the junction with that other? To determine these questions, resort must be had to the railway legislation of the state. Chapter 77, section 12, of the Acts of the Seventeenth General Assembly provides that "no railroad company shall charge, demand or receive

from any person, company or corporation an unreasonable price for the transportation of * * * property. * * *" The next section of the same act provided as a punishment for the violation of the provisions of the act that such violation should forfeit to the party aggrieved three times the actual damages sustained or overcharges paid, with costs and attorney's fees. By Acts Twenty-second General Assembly, chapter 28, which in terms applies to all cases of the transportation of property by railroad within the state, it is provided that: "All charges made for any service rendered * * * in the transportation of * * * property in this state. * * * shall be reasonable and just; * * * and every unjust and unreasonable charge for such service is prohibited and declared unlawful." "If any common carrier subject to the provisions of this act, shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect or receive from any person or persons a greater or less compensation for any service rendered * * * in the transportation of * * * property subject to the provisions of this act, than it charges, demands, collects or receives from any other person of persons doing * * * a like and contemporaneous service in the transportation of a like kind of traffic, such common carrier shall be deemed guilty of an unjust discrimination. * * * * " *Id.* section 3. Section 4 of the same act prohibits the giving of any preference or advantage to any particular person or locality in any respect whatsoever, and likewise prohibits the subjecting of any person or locality to any prejudice or disadvantage in any respect. In section 5 of the same act it is provided: "And said common carrier shall charge no more for transporting freight to or from any point on its railroad than a fair and just rate as compared with the price it charges for the same kind of freight transportation to or from any other point." By section 9 of the same act the violations of the provisions of the chapter are made to subject the offending carrier to three times the

amount of the damages sustained, with costs and attorney's
fees. It is contended that neither of these acts applies to
joint rates. We have held that they do not authorize the
railway commission to fix them, and it may be conceded for
the purposes of the case that they do not apply to joint rates
established by voluntary agreement. But the Twenty-
third General Assembly passed an act known as
"chapter 17 of the Acts of 1890," the first section
of which provides: "That chapter 28 of the Acts of the
Twenty-second General Assembly be and the same is hereby
amended as follows: That said chapter 28 of the Acts
of the Twenty-second General Assembly shall not be con-
strued to prohibit the making of rates by two or more rail-
road companies for the transportation of property over two
or more of their respective lines of railroad within this
state, and a less charge by each of said railroad companies
for its portion of such joint shipment than it charges for
a shipment for the same distance wholly over its own line
within the state, shall not be considered a violation of said
chapter 28 of the Acts of the Twenty-second General Assem-
bly and shall not render such railroad company liable to
any of the penalties of said act; but the provisions of this
section shall not be construed to permit railway companies,
establishing joint rates, to make by such joint rates any
unjust discrimination between the different shipping points
or stations upon their respective lines between which joint
rates are established, and any such unjust discrimination
shall be punished in the manner and by the penalties pro-
vided by chapter 28 of the Acts of the Twenty-second Gen-
eral Assembly." That section clearly covers joint rates, for
it says, in effect, that railway companies establishing joint
rates shall not make any unjust discrimination between the
different shipping points or stations upon their respective
lines between which joint rates are established. Section
5 of the same act also provides that every unjust and
unreasonable charge for the transportation of freight and

cars over two or more railroads in the state is prohibited, and made unlawful, and that each and every one of the companies making such unreasonable and unlawful charge shall be punished as provided in chapter 28 of the Acts of the Twenty-second General Assembly. The petition recites that defendants established joint rates between all stations on their respective lines in the state of Iowa; that they unjustly discriminated between the different points on their lines, to plaintiffs' damage; and that the rates charged plaintiffs were unjust, and unreasonable, and extortionate. The other allegations as to the particular points may be treated as statements of fact making a *prima facie* case of discrimination, for it was competent for plaintiffs to prove by other evidence, that the charges and exactions paid by them were unreasonable, extortionate, and discriminatory. And, as the evidence on which the court relied is not before us, we cannot say that the judgments were improperly rendered. In the face of these allegations the petitions were not vulnerable to demurrer. *Cook v. Railway Co.,* 81 Iowa, 551, squarely decides this point. It is there said: "It is strenuously contended by counsel for appellant that it is not charged in the petition as a substantial fact that the rate charged the plaintiffs was unreasonable. It is distinctly averred that the rate charged the plaintiffs was unreasonable, and is and was an unjust discrimination. This appears to us to be a sufficient answer to the argument of counsel to the effect that the action is founded solely upon the fact of mere difference in rates." Again, when two or more companies voluntarily enter into an agreement for joint rates, which agreement covers all stations upon the line in any given state, they virtually create a new and independent line, and, in our opinion, become subject to the law preventing unjust discrimination and unreasonable exaction. See *Railway Co. v. Osborne,* 10 U. S. App. 430 (3 C. C. A. 347, 52 Fed. Rep. 912); *Parsons v. Railway Co.,* 167 U. S. 453 (17 Sup. Ct. Rep. 887); *Interstate*

*Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co.*
167 U. S. 479 (17 Sup. Ct. Rep. 896). Whether they then
come within the prohibitions of the Acts of the Twenty-
second General Assembly need not be determined, for sec-
tion 1 of the Acts of the Twenty-third General Assembly pro-
vides that they shall not make any unjust discrimination
between the different shipping points or stations upon their
respective lines between which joint rates are established.
If, as defendants contend, joint rates had been established
between Whiting and Blencoe and Council Bluffs, and
between no other points, there would be much force in their
argument that such rates could not be measured by any
other charges. But, as the petition alleges that joint
rates were established for all stations upon either
line, the rates and charges for the same class of goods
over like distances of road may be considered, not only in
arriving at the solution of the question of unjust discrimina-
tion, but also in determining whether the rate charged was
unreasonable. It is distinctly averred in the petition that
the defendants charged for like goods over the same dis-
tance of road less than was charged the plaintiffs. In view
of the other allegations of the petition this made out a *prima
facie case.* 1 Wood Railroads, section 198.

Consideration of the various acts of the legislature
clearly indicates that, when joint rates are established
between all points on two or more lines of road, extortion
and discrimination are prohibited. Such are the express
terms of the statute, and that this was the intent of the
legislature there can be no doubt. But it is said that sec-
tion 24 of the Acts of the Twenty-second General Assembly
defines discrimination, and that the case at bar does not
come within that definition. It is true that the sec-
tion referred to does say that to collect or charge
more for the transportation of a like quantity of
freight of the same class, being transported in the same
direction over any portion of the same railroad of equal

distance, from one person than from another, shall be deemed *prima facie* evidence of unjust discrimination in freight rates. But the same section also says that this shall not be construed to exclude other evidence tending to show any unjust discrimination in freight rates. Section 3 of that act also provides that if any common carrier charge, collect, or receive from any person a greater compensation for service rendered than it charges, collects, or receives from any other person for doing a like and contemporaneous service, such carrier shall be guilty of unjust discrimination; and the latter part of section 5 reads: "And said common carrier shall charge no more for transporting freight to or from any point of its railroad than a just and fair rate as compared with the price it charges for the same kind of freight transportation to or from any other point." So that, if we look to the Acts of the Twenty-second General Assembly to determine what constitutes extortion or unjust discrimination, we find that the facts stated in the petition clearly bring the case within the definitions there given. If it be true, however, as claimed by appellants, that the facts pleaded do not make out a *prima facie* case because of the fact that in one case the charge was transporting freight to a point west of Missouri Valley, while in the other it was for transporting like goods to a point east of that place, still a cause of action for unreasonable and extortionate charge and for unjust discrimination is stated in the pleading, and the demurrers were properly overruled.

The constitutionality of the Acts of the Twenty-third General Assembly is assailed. Whatever may be the views of the individual members of this court as to some of the sections of that act, we are all agreed that under the interpretation herein given, section 1 of that act is not vulnerable to attack because of anything in our fundamental law. The other sections of the act are not involved, and we have no occasion to pass upon their validity. Nor are we called upon to say whether or not companies

voluntarily establishing joint rates are bound, under all circumstances, to charge the same rate for carrying the same kind of freight over one part of the road that they do over another. Whether or not such discrimination would be unjust we have no occasion to determine.

II. Complaint is made of the ruling requiring the defendant to answer the interrogatories attached to plaintiff's amended petition. Since the trial of the case in the court below, the legislature has passed an act requiring corporations to answer such interrogatories. The majority of the court are of opinion, however, that such right existed before the adoption of the new Code. The writer and Mr. Justice Ladd do not agree to this conclusion. But, as the matter has now been covered by statute, there is no need to give the reasons that lead to these different conclusions. In the opinion of the majority, there was no error in requiring the defendant to answer the interrogatories.

III. It is said that the interrogatories were fully answered. In the statement of the case we set out the answers. The lower court rightfully struck them out. They showed on their face that no attempt had been made in good faith to answer the interrogatories fairly and candidly. The answers showed a studied attempt to avoid complying with the law by entering a disclaimer on the part of the answering officers as to any personal knowledge regarding the matters inquired about. Counsel for appellants admit in argument (and the fact would be apparent, if not admitted) that the information sought by the interrogatories was in the possession of the defendant corporation, was shown by its books and papers in the custody of the officers, and, for all that appears, easily and speedily accessible to the answering officers. Studiously avoiding all these sources of information in their own possession as officers of the defendant, they answer that they have no personal knowledge as to the matters inquired about, and they know

of no officer of the defendant having such personal knowledge. Under the circumstances, with the means of knowledge in their possession, these answers presented a very clear case of trifling with the court. In *Sloane v. Railway Co.,* 111, Cal. 668 (44 Pac. Rep. 320), it is said in the syllabus, which is sustained by the decision: "A corporation cannot deny, for want of sufficient information and belief, if the matters alleged are presumptively within the knowledge of any of its officers, though the officer verifying the answers is himself without any information or belief on the subject." The court was exceedingly lenient, and more than once extended the time of the defendants to answer the interrogatories. His action in striking these answers and the answers in the case was in all respects proper.

IV. Counsel contend that the interrogatories were immaterial, and that as the affidavit attached thereto was made by an attorney, and, as they were not annexed to the original petition, the defendants were not required to answer them. Some of the interrogatories were certainly material, and, as the objection goes to the whole, and not to particular ones, the first objection is without merit.

The point that the affidavit was made by an attorney does not seem to have been made in the trial court, and cannot be considered. Interrogatories may certainly be attached to an amendment to the petition, and it is within the sound discretion of the court to permit amendments to be made at any time during the trial.

On rehearing it is for the first time suggested in the reply argument that, as the amendment to the petition to which the interrogatories were attached stated no new cause of action, it should not be considered, and that the defendant should, for that reason, be absolved from answering the interrogatories thereto attached. Reliance is placed on *Theis v. Railway Co.,* 107 Iowa, 522. On rehearing we do not consider points not raised at the original submission. This alone is a sufficient answer to defendant's last contention.

But it may be observed that the facts of the case are entirely different from those appearing in the *Theis Case*. There the case was ready for trial, and the plaintiff did no more than refile his petition with interrogatories attached. Here the amendment to the petition recited some material facts not found in the other pleadings, and, in addition to that fact, this amendment was verified, while none of the previous pleadings were. A motion to strike this amendment was filed, but was overruled. While error is assigned on this ruling, it was not argued on the original submission. Defendants then answered the substituted petition, and made no complaint as to the time allowed them for answer. The interrogatories were filed on January 9th, and defendants were given until June 20th to answer, and the answers were not stricken until September of the same year. As plain· tiff had the right to attach the interrogatories to their amendments to their petition, and· as the court, in its discretion, held that such amendments were permissible, there was no error of which defendants may justly complain. *Wilson v. Preston,* 15 Iowa, 246; *Martin v. Shannon,* 101 Iowa, 620; *Hintrager v. Richter,* 85 Iowa, 222; *Guyer v. Manufacturing Co.* 97 Iowa, 132.

V. The court allowed interest on the treble damages claimed from the time the alleged cause of action accrued to the date of the judgment. We think this was error. This statute is penal in character, and therefore liability should be limited to the amount fixed by the statute as compensation for damages sustained, to-wit, the treble damages, attorney's fees, and costs. The following decisions under other statutes are applicable: *Brentner v. Railroad Co.,* 68 Iowa, 530; *Herriman v. Railroad Co.,* 57 Iowa, 187. Plaintiffs, however, having filed in this court an offer to remit the excessive amount allowed, it is ordered that judgment in each case be reduced in the following amounts: In *Blair v. These Defendants* in the sum of eighty-six dollars and seventy-five cents, in *Hollaway v.*

*These Defendants* in the sum of four hundred and eighty-
one dollars and seventy-four cents, in *Brown v. These
Defendants* in the sum of ninety-seven dollars and eighty
cents, in *Macoy v. These Defendants* in the sum of one hun-
dred and eighty-five dollars and seventy cents. The death
of A. A. Brown, a plaintiff, is suggested, and John R.
Brown, his administrator, is substituted as a party plaintiff.
The judgment of the court below, as thus MODIFIED, in each
case will stand affirmed, including the allowance therein
made of attorney's fees, and said modified judgments will
draw six per cent. interest from the date they were rendered
in the district court.—AFFIRMED.

LADD and DEEMER, JJ., dissent.