J. N. BRAS, Plaintiff, THE BURLINGTON, C. R. & N. R. Co., Intervenor, Appellants, v. R. F. McCONNELL, County Treasurer, *et al.*

**Connecting Carriers:** JOINT RUNNING ARRANGEMENTS. Under Code, section 2066, providing that any railway corporation may make joint running arrangements, not in conflict with law, with any corporation operating any connecting railway, a railway may contract with connecting lines to carry beyond its line,

subject only to the qualification that under such agreement arbitrary rates cannot be fixed which are discriminatory in their nature.

PUBLIC POLICY: *Tax in aid of carrier so contracting.* The petition for an election to vote a tax to a railway contained a condition that no part of such money should be paid to such railway till it made a valid contract with a certain other railway to operate in connection and solely with such other railway, and in active competition with certain other lines. The railway for which the tax was paid was a short line, lying wholly within two counties, and could not compete with the through lines, nor render service of much value to shippers, without availing itself of the services of other lines. *Held*, that such condition was not contrary to public policy.

*Question of fact.* The question whether such contract would be in good faith, and reasonably calculated to serve public interests, is one of fact, and the court will not, as a matter of law, declare the same void.

Australian Ballot: SPECIAL ELECTIONS Acts Twenty-fourth General Assembly, chapter 33, providing that all elections for public officers shall be held as thereinafter provided setting forth what is known as the "Australian Ballot System," and also providing that the term, "city election," as used in the act shall apply to any municipal election, does not apply to a special election held for the purpose of voting taxes.

VALIDITY OF BALLOT. At a special election to vote aid to a railway, there was printed on the ballot a statement, viz., "Shall the following public measure be adopted? viz., Shall the M. Railroad Company be aided in the construction of a line of standard guage railroad from the city of M., * * by way of W., in W. township, * * * to some point of intersection with the I. C. Railroad, * * * by a tax of 3 per cent on the assessed value of the taxable property of the township of W., * * * on the conditions named in the petition therefor and notice of election?" *Held*, that the printing of such statement on the ballot did not render the tax void.

CONSTRUCTION OF BALLOT. The notice of a special election to vote a tax in aid of a railway stated that the tickets for the tax would have the words "For Taxation," and those opposed the words "Against Taxation," printed on them. The tickets were printed on a single slip of paper, as follows: "For Taxation | Yes |        | · Against Taxation | No |        |." The voter was called on to put a cross in the square opposite the word

"Yes," or "No," according as he might wish to favor or oppose the
tax. *Held*, that it was the intention to have the voters for the
tax say "Yes" and those opposed "No," and the contention that
no ticket against the tax was given the voter was without
merit.

*Appeal from Louisa District Court.*—HON. W. S. WITH-
ROW, Judge.

### TUESDAY, OCTOBER 1, 1901.

ACTION in equity to enjoin the collection of a tax
levied in aid of a railway. From a decree dismissing peti-
tion at plaintiff's costs, plaintiff and intervener appeal.—
*Affirmed.*

*S. K. Tracy* and *Blake & Blake* for appellants.

*Geo. W. Seevers, C. A. Carpenter,* and *Jayne & Hoff-
man* for appellee.

WATERMAN, J.—Plaintiff, Bras, and the Burlington,
Cedar Rapids & Northern Railroad Company are owners of
property in Wapello township, Louisa county, in this state.
In pursuance of certain proceedings had, the tax in ques-
tion was levied to aid in the building of the Muscatine
North & South Railroad. Plaintiff brought this action to
restrain the collection of the tax, alleging various grounds
in suport of the relief asked. The Burlington, Cedar Rapids
& Northern Railroad Company intervened in the action, and
joined with plaintiff in asking to have the tax levy an-
nulled.

I. Among other grounds of relief, it is set up that in
holding the election there was a failure in several particu-
lars to comply with the requirements of chapter 33, Acts
Twenty-fourth General Assembly, popularly known
as the "Australian Ballot Law." In *Pritchard v.
Magoun,* 109 Iowa, 364, decided since the disposi-
tion of the case at bar by the trial court, it was held that

the act referred to does not apply to special elections held for the purpose of voting taxes.

II.   The petition for the election to vote this tax and the notice of such election each contained the following condition: "Nor shall any of said money be drawn from the county treasury until there is exhibited to and filed with the trustees of Wapello township a valid contract between the Muscatine North & South Railroad and the Iowa Central Railway Company, whereby the road proposed to be constructed shall, when built, be operated in connection and solely with the said Iowa Central Railway, as a part of its railway system, for at least twenty-five years, and in active and competitive competition with the Chicago, Rock Island & Pacific and the Burlington, Cedar Rapids & Northern Railways; trains to be run thereon on all days except Sunday." This provision gives rise to the first serious contention in this court. Appellants say: "(1) Such proposition is void, as being against public policy. (2) The tax is invalid, as being voted upon a stipulation which is in contravention of the statutes of Iowa. (3) It creates a monopoly for twenty-five years in favor of the Iowa Central Railway of all the business of the other named railroad, and is, therefore, in restraint of commerce and trade. (4) It is beyond the power of the Muscatine North & South Railway Company to make or file a valid contract, such as is contemplated in the above clause of the petition and notice of election. (5) A railway corporation cannot thus alien or lease its franchise, or the property necessarily needed to perform its obligations to the public, without legislative sanction therefor. (6) It was beyond the power of the people of such township to vote a tax upon such a condition." Unquestionably, at common law, connecting carriers were at liberty to make agreements as to through traffic. Such a carrier was not obliged to carry except on its own line, but it might contract for shipments beyond. Lawson, Carriers, 343, and cases cited. When it does con-

tract for shipments beyond its own line, it may, in the absence of statutory regulations to the contrary, determine what agencies it will employ. *Atchison, T. & S. F. R. Co. v. Denver & N. O. R. Co.*, 110 U. S. 667 (4 Sup. Ct. Rep. 185, 28 L. Ed. 291). The question is one largely of good faith on the carrier's part and the demands of public service. *Stewart v. Transportation Co.*, 17 Minn. 372 (Gil. 348). Now, not only is there nothing in our statute that wholly cuts off this right, but, as we construe it, Code, section 2066, expressly confirms it. That section is in part in these words: "Any railway corporation may sell or lease its property and franchises to, or make joint running arrangements not in conflict with law, with any corporation owning or operating any connecting railway," etc. "Joint running arrangements" must mean mutual traffic agreements. While under such agreement, arbitrary rates cannot be fixed which are discriminatory in their nature, yet, subject to this qualification, the validity of such joint arrangements, when made *bona fide,* has been recognized by this court. *Blair v. Railway Co.*, 109 Iowa, 369. Enough appears in this record to make it clear that the Muscatine North & South Railroad is a short line lying wholly within two counties of this state. It could not compete for business with either of the trunk lines running through Louisa county, nor could it render any service of much value to shippers along its line without availing itself of the facilities that one or more of them offered. Manifestly shippers along the contemplated road must use one of the trunk lines also to get their produce to a general market. It was therefore to their interest to have such arrangements entered into as would, in effect, make this short line a part of a greater system. This is what we understand was called for by the condition prescribed. No shipper is prevented or obstructed in sending his freight over any other than the Iowa Central Line. It seems to us the interests of the public demanded such an arrangement as is here contemplated.

III.   But there is still another consideration of weight against the contention of appellants.   Whether such an agreement as is here contemplated would be in good faith, and reasonably calculated to serve public interests, is a question of fact, of which we have no evidence in the record.   In *Stewart v. Transportation Co., supra,* the contract before the court was one for through transportation between a railway company and a connecting line of steamers.   One clause of the agreement required the railway company to pay a fixed sum to the steamer company on all passengers and freight carried over its line, and destined to points reached by the steamer company, whether they were transported by the latter or not.   The court held that it could not, as a matter of law, say that such an agreement was void, and reversed a judgment rendered in plaintiff's favor on the pleadings.   We are asked in the present case to say that no valid contract such as is outlined in the petition and notice can be made.   This we cannot do.

IV.   The form of the ballot is the matter of which complaint is next made.   Some of the questions thus raised are mentioned, but not argued.   In so far as these matters are not disposed of by the case of *Pritchard v. Magoun, supra,* we deem it sufficient to say they are without merit.   In oral argument it was insisted that matter was printed on the ballot which should not have been there, and which was calculated to influence the result of the election.   The printing of surplusage on the ballot will not necesarily invalidate the election.   *Cattel v. Lowry,* 45 Iowa, 478.   It will have that effect only when the voter may have been misled thereby.   *Brown v. Carl,* 111 Iowa, 608.   The matter complained of here was the following statement, which appeared on the face of the ballots:   "Shall the following public measure be adopted, viz.:   Shall the Muscatine North & South Railroad Company, incorporated under the laws of Iowa, be aided in the construction of a line of

standard guage railroad from the city of Muscatine, in Muscatine county, Iowa, by way of Wapello, in Wapello township, in said Louisa county, Iowa, to some point of intersection with the Iowa Central Railroad in Louisa county, Iowa, by a tax of three (3) per cent. upon the assessed value of the taxable property of the township of Wapello in said county and state (assessment of 1897), upon the condition named in the petition therefor and notice of election." It is apparent that this statement contains but the terms of the proposition upon which the vote was to be had, and that all the conditions are referred to. It is impossible to discern how anything which thus appeared could have influenced the vote more one way than the other.

But the matter most strenuously insisted upon by appellants in this connection is the form of expression submitted to the voter. The tickets were printed upon a single slip of paper, as follows:

| For Taxation ....................................... | YES | |
| --- | --- | --- |
| Against Taxation ................................... | NO | |

The voter was called upon to put a cross in the square opposite the word "Yes" or "No," according as he might wish to favor or oppose the tax. The contention now made is that a vote "No" as the ticket reads would be a vote for taxation, because it would negative the idea that the voter was opposed thereto. Therefore, it is said, no ticket against the tax was given the voters. This is a technical construction. To us it seems manifest the intention was to have voters for the tax say "Yes," and those opposed say "No." We do not see how it could have been otherwise understood. We may say further, the notice of election stated that the tickets for the tax would have printed upon them the words "For Taxation," and those opposed the words, "Against Taxation." As a considerable number of votes were cast

against the tax, it is apparent the opponents of the measure found no difficulty in making themselves understood. This action was not brought until some time after the election was held, and after the ballots had been destroyed. Only by adopting the strained construction of appellants, is it possible to find any basis for the thought that the votes cast and intended to be against the tax were not properly counted.

After a due consideration of all the points made, we reach the conclusion that the judgment of the district court is correct, and it is therefore AFFIRMED.